In re Lorraine E. BYERS, Debtor.

David M. Nickless, Trustee, Appellant,

v.

Cheryl A. Conley and Robert D. Byers, As They Are Trustees of the Byers Family Irrevocable Trust, Appellees.

BAP No. MW 03–065.
Bankruptcy No. 01–41047–HJB.
Adversary No. 02–4161–HJB.

United States Bankruptcy Appellate Panel of the First Circuit.

Feb. 4, 2004.

**2**

David M. Nickless, Trustee.

John D. Hodges, Jr., Lawrence, MA, on brief for Appellees Cheryl A. Conley and Robert D. Byers.

Before LAMOUTTE, DE JESÚS, and HAINES, United States Bankruptcy Appellate Panel Judges.

HAINES, Bankruptcy Judge.

Before us is David Nickless's appeal of the bankruptcy court's judgment entered in favor of Cheryl A. Conley and Robert D. Byers, trustees of the Byers Family Irrevocable Trust. Nickless, chapter 7 trustee for Lorraine Byers ("Lorraine"), had sued them seeking to avoid as a fraudulent transfer Lorraine's pre-bankruptcy conveyance of her solely owned residence to the Byers Trust. He asserts that the bankruptcy judge erred in failing to enter judgment in his favor after finding facts sufficient for him to prevail under theories set out in his complaint. Alternatively, he urges the court erred in failing to conform the complaint to the evidence after trial, a step that would also have resulted in a favorable judgment. Because the bankruptcy judge erred in failing to consider amending the pleadings to conform to the evidence under Fed. R. Bankr.P. 7015(b), we vacate the judgment and remand the matter for further proceedings.

## JURISDICTION

Nickless appeals from the judgment entered in the fraudulent transfer adversary proceeding. Such a judgment is the quintessential final order over which we exercise jurisdiction under 28 U.S.C. § 158(b). *See Fleet Data Processing Corp. v. Branch*

*(In re Bank of New England Corp.)*, 218 B.R. 643, 647 (1st Cir. BAP 1997).

## BACKGROUND

### 1. Pretrial

Lorraine filed a voluntary petition seeking relief under chapter 7 of the Bankruptcy Code on February 26, 2001. Approximately two-and-one-half years before bankruptcy, on August 12, 1998, Lorraine had conveyed her single family residence in Tewksbury, Massachusetts, to the Byers Trust for no consideration. Invoking Bankruptcy Code § 544(b)[1] and Massachusetts law, Nickless, with the aim of recovering the property's value for the benefit of Lorraine's creditors, filed a two page complaint seeking to avoid the transfer. He alleged Lorraine conveyed the property with the actual intent to hinder, delay, or defraud her creditors. Alternatively, he asserted she transferred it for less than fair consideration, while insolvent (or was rendered insolvent by the transfer), or at a time when she intended to incur, or believed or reasonably should have believed she would incur, debts beyond her ability to pay as they came due.[2]

Conley and Byers answered, admitting the conveyance took place and that Lorraine had owed approximately $16,000 in credit card debt on the transfer date. They denied Lorraine received less than fair consideration in return and denied other circumstances that would warrant the transfer's avoidance under Massachusetts law.[3]

Consistent with local practice, the parties submitted an initial pretrial stipulation

---

1. References to the "Bankruptcy Code" or the "Code" are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 *et seq.*

2. Complaint, Appendix ("App.") at 1–2.

3. Answer, App. at 12–13.

generally outlining claims and defenses.[4] The bankruptcy court's pretrial order set a discovery deadline and a trial date.[5] In addition, the pretrial order required counsel to prepare and file a joint pretrial statement that would include a recitation of admitted and disputed facts and disputed points of law. Its function was to define and limit expressly legal and factual disputes to be tried. The parties complied, filing their joint pretrial statement upon discovery's close.[6] It set forth extensive stipulations of fact, described the factual issues remaining to be tried, and, finally, represented that, "The Following Issues of Law, and No Others, Remain to Be Litigated:"

> Whether the transfer of the Tewksbury residence to the Byers Trust was a fraudulent transfers [sic] pursuant [Mass.] G.L. ch. 109A, Sec. 5.[7]

## 2. Trial

The court admitted nine agreed exhibits into evidence and ascertained that the parties would only call one witness, Lorraine. Nickless made a brief opening statement set forth below, without objection.

> Mr. Nickless: This is a relatively simple matter. It's my complaint to avoid a fraudulent transfer. The admitted facts are that the debtor was the sole owner of real estate located at 126 Walnut Street in Tewksbury in the calendar year 1998, that the real estate comprised substantially all of her assets, and that she transferred that real estate into an irrevocable trust for one dollar by deed dated August 12, 1998; and it is also admitted that she and her husband have paid all the expenses of the real estate since that transfer.
>
> It will be shown by the Trustee that the debtor was insolvent at the time that she made that transfer, that she received less than the equivalent, less than fair consideration as a result of that transfer, and that the transfer was with the actual intent to hinder, delay or defraud, that she was not able to meet all of her obligations in a timely fashion at or around the time of the transfer of real estate, and for those reasons I am asking and will be asking the Court at the conclusion of the trial to void the transfer of the real estate.
>
> I would point out to the Court that as is indicated in the bankruptcy petition the total amount of unsecured debt in this case is approximately $20,000, and it will be proven, I believe, that as a result or [sic] that this property at the time of transfer was worth somewhere on the order of 140 to $150,000. Thank you.

Trial Transcript ("Transcript"), App. at 106–107.

At the close of trial, Nickless summed up, again without objection, asserting that creditors whose claims arose before the transfer remained unpaid, that the conveyance was made for less than fair consideration, that Lorraine had continuously treated the property as her own following the transfer, that the transfer rendered her insolvent, and that there was evidence that Lorraine was not paying her debts as they came due in 1998. He continued, asking the judge:

> I would ask that even if the Court did not [sic] deny the relief sought in this

4. Pretrial Stipulation, App. at 15–17.

5. Second Pretrial Order, App. at 18–20.

6. Joint Pretrial Statement, App. at 21–23.

7. *Id.*, App. at 22.

complaint under a fraudulent transfer, that the Court allow the complaint to conform to the evidence to indicate that notwithstanding the transfer out of this property, that this debtor continues to own the property, equitably continues to utilize the property and treat the property as her own and I would ask for those reasons that judgment be awarded in the plaintiff's name, and that the—transfer in August of 1998 be avoided.

Transcript, App. at 142. Lorraine's counsel responded, arguing that the Byers' household was solvent in 1998 and remained so until 2000, when injuries and unemployment forced Lorraine's bankruptcy filing.

The court provided the parties with its decision immediately, articulating oral findings of fact and conclusions of law on the record. The judge found that Lorraine received less than reasonably equivalent value in exchange for transferring her property to the Byers Trust; that she did not transfer her property to with actual intent to hinder, delay, or defraud her creditors; and that, at the time of the transfer, she did not intend to incur obligations she would be unable to pay as they came due, nor did she believe (or should reasonably have believed) that she would incur such debts.[8] He also found that Lorraine was rendered insolvent by the transfer.[9] He completed his findings and conclusions as follows:

> The cause of action is under Section 544(b) of the Bankruptcy Code that draws in Chapter 109(a) [sic] of the Massachusetts General Laws if in fact there is a creditor who under state law could have upset the transfer under Mass. General Laws, Chapter 109(a) [sic]. The difficulty, however,

is that if there existed a creditor who could have upset the transfer, and, frankly, I think there likely was a debtor—a creditor who could have upset the transfer who existed at the time and who continues to exist, in fact, all three of Bank of America, AT & T, and the predecessor to Household Credit, they would have had to have shown under the Massachusetts General Laws, Chapter 109(a) [sic], that the debtor was made insolvent as a result of the transfer.

However, if one now goes to Subpart C of the joint pretrial stipulation, that says, quote, "The following issues of law and no others remain to be litigated." And what is the issue of law? Whether the transfer of the real property located at 126 Walnut Street, Tewksbury, Massachusetts, was a fraudulent transfer pursuant to Chapter 109(a) [sic], Section 5, but the insolvency provision is in Section 6, not Section 5.

There is no insolvency element in Section 5 of Chapter 109(a). The Trustee has relied on the wrong section of Chapter 109(a), and for that reason, I have no option but to grant judgment for the defendants. Thank you very much.

Transcript, App. at 146–47.

### STANDARD OF REVIEW

■ We review factual findings for clear error and legal conclusions *de novo*. *Werthen v. Werthen (In re Werthen)*, 329 F.3d 269, 272 (1st Cir.2003).

### DISCUSSION

■ Nickless contends that the bankruptcy court erred as a matter of law when

---

8. Transcript, App. at 144–46.

9. *Id.*, App. at 146.

it entered judgment for the defendants, notwithstanding factual findings that entitled him to judgment under a theory fairly presented by the complaint and subsequent pleadings. More specifically, he contends that his claim for avoidance, based on Lorraine's conveying her property to the Byer Trust for less than fair consideration, thereby rendering her insolvent, was "part of the case" through trial, notwithstanding the joint pretrial statement's failure to cite Mass. Gen. Laws, Ch. 109A, § 6. He asserts the bankruptcy judge erred.

Nickless's complaint arguably sets forth avoidance claims under either Mass. Gen. Laws, Ch. 109A § 5 or § 6 (hereafter referred to as " § 5" and " § 6," respectively). Section 5 sets forth elements warranting a transfer's avoidance by any creditor, whether he or she held a claim at the transfer date or acquired the claim later.[10] Section 6 sets forth elements which, if established by a creditor who held a claim on the transfer date, warrant avoidance.[11] The complaint separately alleged that the transfer was made with "actual intent to hinder, delay or defraud" creditors,[12] and that it was made for "less than fair consideration"[13] and generally averred that the transfer "was fraudulent as that term is defined in MGL Chapter 109A et seq."[14]

The parties' initial pretrial stipulation, read in full, arguably evidences that defense counsel was aware of, and prepared to meet, claims sounding under either § 5 or § 6. The defendants met Nickless's action on under both theories. They asserted Lorraine "was not insolvent" at the time of the conveyance; that she did not intend (nor could she be charged with an intention) to incur debts beyond her ability to pay; and that she did not transfer the property with fraudulent intent. Although much of the response addressed points pertinent to § 5(a) and (b), solvency issues relate significantly to a § 6 claim.

The joint pretrial statement, submitted in response to the court's order requiring an express statement and limitation of

---

**10.** It provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with the actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Mass. Gen. Laws, Ch. 109A, § 5.

**11.** In pertinent part, it reads:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
> (b) A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time, and the insider had reasonable cause to believe that the debtor was insolvent.

Mass. Gen. Laws, Ch. 109A, § 6.

**12.** Complaint at ¶ 9, App. at 2.

**13.** *Id.* at ¶ 10.

**14.** *Id.* at ¶ 11.

facts and law at issue, did not mention § 6, but, again arguably, its recitation of conceded and contested facts discloses Nickless's pursuit of theories under § 6, as well as § 5. Both the stipulated facts,[15] and the contested facts,[16] could bear on such claims, either as material facts or as evidence tending to prove material facts.[17] It can hardly be said that, although the joint pretrial statement does not cite § 6, it stands as an unambiguous manifestation of Nickless's decision to forego those claims. The trial record (the evidence as well as the arguments presented by both sides) could well support a conclusion that the joint pretrial statement's failure to cite § 6 was an oversight, or that, if the omission was intentional, Nickless's claims (and the defendants' defenses) morphed at trial.

Under the circumstances, we conclude the bankruptcy judge erred when he ruled that he had "no option" but to enter judgment for Conley and Byers without considering Nickless's § 6 claim or the claim that Lorraine maintained beneficial, equitable ownership of the residence through the date of her bankruptcy. As to the former, Nickless maintains he pursued the claim throughout the case. And as to the latter, Nickless's express motion to amend the pleadings to conform to the evidence, made during final argument, went without direct response from the bankruptcy court.[18]

It is entirely plausible that, notwithstanding the joint pretrial statement's lack of express reference to § 6, the omission was mistaken and that, within the principles of notice pleading, the § 6 claim was alleged and pursued from Nickless's complaint through trial. The court's summary disposition of both claims can best be reviewed in light of the standard applicable to a Rule 15(b) motion to amend a complaint to conform to the evidence. Fed. R. Bankr.P. 7015(b)(incorporating Fed. R.Civ.P. 15(b)). The rule provides:

> **(b) Amendments to Conform to the Evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Fed. R. Bankr.P. 15(b).

We consider that Rule 15(b) provides the appropriate analytical framework here

---

**15.** Joint Pretrial Statement ¶ A, App. at 21–22.

**16.** Joint Pretrial Statement ¶ B, App. at 22.

**17.** Several of the conceded and contested facts relate closely to elements of the § 5 claim (*e.g.,* solvency before and after transfer, insider status of transferees), but are also among the factors that can be considered to determine the fraudulent intent § 6 proscribes. *See* Mass. Gen. Law, Ch. 109A, § 6(b)(listing factors that may be considered to prove fraudulent intent).

**18.** Given the court's rejection of the § 6 claim, it is fair to assume that as to this claim, too, the court considered it had no discretion but to reject it.

because the essential question is one of fairness: did Conley and Byers have fair notice that the claims at issue were being pursued, and an opportunity to meet them, or did they consent, expressly or by implication, to trial of those issues.[19] *See generally* 6A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* §§ 1491,1493 (1990 & Supp.2003) (hereafter "Wright, Miller & Kane").

Rule 15(b) applies under two distinct circumstances: "when an issue not contained in the pleadings is tried by consent (express or implied) of the parties, or when a party objects to evidence as outside the pleadings and the court exercises its discretionary right to allow amendment." *Invest Almaz v. Temple–Inland Forest Products Corp.*, 243 F.3d 57, 71 n. 19 (1st Cir.2001). This case presents a question of trial by consent. The First Circuit has explained that notion:

> Consent to trial on a particular claim can be either express or implied.... "Consent to the trial of an issue may be implied if, during the trial, a party acquiesces in the introduction of evidence which is relevant only to that issue." *DCPB, Inc. v. City of Lebanon*, 957 F.2d 913, 917 (1st Cir.1992). But "[t]he introduction of evidence directly relevant to a pleaded issue cannot be the basis for a founded claim that the opposing party should have realized that a new issue

was infiltrating the case." *Id.; see Galindo v. Stoody Co.*, 793 F.2d 1502, 1513 (9th Cir.1986) ("It is not enough that an issue may be 'inferentially suggested by incidental evidence in the record;' the record must indicate that the parties understood that the evidence was aimed at an unpleaded issue.")

*Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 232 (1st Cir. 2003). A Rule 15(b) motion may be denied for a number of reasons, most notably "undue delay" in making the motion and "undue prejudice" to the opposing party. *Invest Almaz v. Temple–Inland Forest Products Corp.*, 243 F.3d at 71.

Here, the trustee forthrightly asked the court to consider both theories at the case's close. Although he did not presage his argument on the § 6 issues with a Rule 15(b) motion formally denominated as such, the state of the pleadings (and his opponents' lack of objection) explains why. As late as closing argument, he apparently labored under the impression that the § 6 claims had been "part of the case" all along.

The court's refusal to go beyond the joint pretrial statement's failure to mention claims beyond § 5 ruled out assaying the sufficiency of the evidence under either theory. Ordinarily, an appellate tribunal accords "significant deference" to the trial judge's decisions on Rule 15(b)

---

**19.** The backstop of the court's decision is the joint pretrial statement's failure expressly to mention the § 6 claim and the equitable ownership claim. Even had the complaint and earlier pleadings been explicit as to either, the tenor of the judge's comments (and the function of the joint pretrial statement as envisioned by the court's earlier order) demonstrate his conclusion that, subsequent consent notwithstanding, the joint pretrial order's content was determinative, and unalterable. Rule 15(b) "may be employed in a way that has the effect of amending a pretrial order." Wright, Miller & Kane § 1491 at 8.

Although there are decision tending to give the pretrial order a very restrictive and binding effect, most courts faced with the question have held that Rule 16 must be read in light or Rule 15(b). This approach is consistent with the mandate of Rule 1 that the rules shall be construed to secure the "just" determination of every action and the very explicit policy of Rule 15(b) in favor of allowing amendments.

*Id.,* § 1491 at 8–9.

motions. But that standard's application assumes the trial court engaged in a reasoned Rule 15(b) analysis. That did not happen here. And the failure to do so constitutes legal error.

■ Although, in an appropriate circumstance, we might resolve the issues finally on the appellate record, we conclude remand is in order here. The determination whether an issue has been tried by express or implied consent is committed to the trial court's discretion. The matter is best directed there in this case. We emphasize, however, that should the court determine the issues have been tried by the parties' consent, "it has no discretion to deny the motion to amend." 6A Wright, Miller & Kane, § 1493 at 41–42.

### CONCLUSION

For the reasons set forth above, the bankruptcy court's entry of judgment for the defendants is VACATED and the case is REMANDED to the bankruptcy court for proceedings consistent with this opinion.